# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENZELL METCALF,<br><br>        Plaintiff,<br><br>   v.<br><br>HUCKLEBERRY, *et al.*,<br><br>        Defendants. | Case No. 1:19-cv-00809-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 32) |

Plaintiff Denzell Metcalf ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's first amended complaint against Defendants Huckleberry, Marquez, and Franco for failure to protect Plaintiff in violation of the Eighth Amendment.

On December 23, 2020, Defendants filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies for his failure to protect claim against Defendants as required by the Prisoner Litigation Reform Act. Fed. R. Civ. P. 56(c), *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 403 (2014). (ECF No. 32.) Plaintiff filed a "declaration" and an "opposition" in response to the motion. (ECF No. 33, 35, respectively.) Defendants filed replies to both of Plaintiff's documents. (ECF No. 34, 36, respectively.)[1] On August 11, 2021, Plaintiff filed a Reply in Support of Opposition. (ECF No.

---

[1] Concurrent with the filing of this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 32-9.)

1

41.)² The motion for summary judgment is deemed submitted.  Local Rule 230(l).

## I.     Legal Standards

### A.     Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  *Albino*, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  *Id.*

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy.  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him.  *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue of exhaustion remains with Defendants.  *Id.* (quotation marks omitted).

---

² Generally, parties are not permitted to file surreplies. See Local Rule 230(l). However, district courts have the discretion to either permit or preclude a surreply. *JG v. Douglas County School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse its discretion in denying leave to file a surreply where it did not consider new evidence in reply).  The surreply is not signed under penalty of perjury. Nonetheless, the Court has considered Plaintiff August 11, 2021 surreply and addresses it *infra*.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

### C. Summary of CDCR's Administrative Review Process

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1. Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material

3

adverse effect upon his . . . health, safety, or welfare." *Id.* at § 3084.1(a).

The process is initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal. *Id.* at § 3084.2(a). In the appeal form, prisoners must list all staff members involved and describe their involvement in the issue. *Id.* at § 3084.2(a)(3). If the inmate does not have the requested identifying information about the staff member, he must provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member in question. Id.

Three levels of review are involved—a first level review, a second level review and a third level review. *Id.* at §§ 3084.5(c)–(e), 3084.7. Bypassing a level of review may result in rejection of the appeal. *Id.* at § 3084.6(b)(15). Under the PLRA, a prisoner has exhausted his administrative remedies when he receives a substantive decision at the third level. *See Barry v. Ratelle*, 985 F.Supp. 1235, 1237–38 (S.D. Cal. 1997).

II. **Undisputed Material Facts (UMF)**[3]

1. Plaintiff alleges on July 6, 2018, Defendants Franco, Marquez, and Huckleberry endangered his safety by escorting him to a D Yard Building 6 cell where he had an altercation with his cellmate. (FAC, Doc. 10 at 7.)

2. In the first amended complaint, Plaintiff alleges he exhausted his administrative remedies, but the "third level was denied due to failure to submit a CDCR 1858 Rights and Responsibilities Statement." (FAC, Doc. 10 at 2.)

3. In 2018 and 2019, the inmate grievance process had three levels of administrative review. An inmate needed to obtain a decision at all three levels to exhaust administrative remedies. (Doc. 32-2, Wattree Decl. ¶8.)

4. At all relevant times, the California Department of Corrections and Rehabilitation ("CDCR") and Kern Valley State Prison ("Kern Valley") had an administrative

---

[3] Plaintiff did not provide a separate statement of disputed or undisputed facts in his opposition. Local Rule 260(a). As a result, Defendants' Statement of Undisputed Facts in support of their motion for summary judgment is accepted except where brought into dispute by Plaintiff's verified First Amended Complaint or declaration in support of his opposition. *See Jones v. Blanas,* 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

4

1     process available for inmates to submit grievances. (Doc. 32-6, Leyva Decl. ¶6.)

2   5. CDCR uses a program called the Inmate Appeals Tracking System ("IATS") to

3     electronically log and track inmate appeals through all levels of review. (Doc. 32-6,

4     Leyva Decl. ¶ 4.)

5   6. The Kern Valley Appeals Office receives, reviews, and tracks all non-medical inmate

6     appeals submitted for first and second-level review concerning events at Kern Valley.

7     First and second-level appeals are assigned a log number in the institution's IATS

8     system (IATS I & II). (Doc. 32-6, Leyva Decl. ¶¶ 3-4.)

9   7. CDCR's Office of Appeals ("OOA") receives, reviews, and maintains inmates' non-

10     medical appeals accepted at the third and final level of administrative review. When

11     OOA receives an appeal, it is assigned a third-level tracking number and entered into

12     OOA's computer tracking system (IATS III). (Doc. 32-4, Moseley Decl. ¶¶ 2-3.)

13   8. On July 12, 2018, Plaintiff submitted appeal, which was logged as appeal number

14     KVSP-O-18-01973, concerning the events of this lawsuit to Kern Valley Appeals

15     Office. (Doc. 32-6, Leyva Decl. ¶ 8; Doc. 32-2, Wattree Decl. ¶ 12.)

16   9. On August 20, 2018, Plaintiff completed a CDCR Form 1858 Rights and

17     Responsibilities Statement in appeal log number KVSP-O-18-01973, which

18     Lieutenant Wattree also signed and dated the same day. (Doc. 32-6, Leyva Decl. at ¶

19     9; Doc. 32-2, Wattree Decl. ¶¶ 18-19; Doc. 32-3, Wattree Decl. Exhibit 1.)

20   10. On August 31, 2018, Lieutenant Wattree prepared a second-level response

21     memorandum, which was partially granted Plaintiff's appeal, but staff was found not

22     to have violated any CDCR policy. The second-level response memorandum advised

23     Plaintiff that he must submit his staff complaint appeal through all levels of appeal

24     review, up to and including the third-level review. The second-level response was sent

25     to Metcalf on September 5, 2018. (Doc. 32-6, Leyva Decl. ¶ 10; Doc. 32-3, Leyva

26     Decl. Exhibit 3; Doc. 32-2, Wattree Decl. ¶ 21.)

27   11. One grievance was submitted by Plaintiff for appeal log number KVSP-18-01973,

28     which was assigned number (IAB No. 1813513) at the third level. (Doc. 32-4,

|   |   |
|---|---|
| 1 | Moseley Decl. ¶ 7; Doc. 32-5, Moseley Decl. Exhibit 1.) |
| 2 | 12. The appeal was not accepted for review at the third level, and was screened out and |
| 3 | rejected on January 18, 2019, and Plaintiff was informed it was rejected because it |
| 4 | "was missing a necessary supporting document," which Plaintiff was informed was |
| 5 | the "CDCR Form 1858 Rights and Responsibility Statement." (Doc. 32-5, Moseley |
| 6 | Decl. ¶¶ 7, 9; Doc. 32-6, Moseley Decl. Exhibits 1, 3; Doc. 32-2, Leyva Decl. ¶ 11.) |
| 7 | 13. Plaintiff did not resubmit appeal log number KVSP-O-18-01973 to the third level after |
| 8 | it was rejected on January 18, 2019, and it was not accepted for review or decided by |
| 9 | the OOA (third level).[4] (Doc. 32-4, Moseley Decl. ¶¶ 7, 10; Doc. 32-6, Moseley Decl. |
| 10 | Exhibit 1.) |

14. OOA did not receive further submissions regarding appeal log number KVSP-O-18-01973 from Plaintiff. (Doc. 32-5, Moseley Decl. ¶ 10; Doc. 32-6, Moseley Decl. Exhibit 1.

### III. Discussion

#### 1. Parties' Positions

Defendants contend they introduced evidence that administrative remedies were available to Plaintiff before the action was brought and Plaintiff lacked any evidence to support he exhausted administrative remedies. The third level rejected Plaintiff's appeal because he failed to attach the 1858 Rights and Responsibility Statement and he failed to resubmit the appeal with the appropriate documentation.

Plaintiff argues that he knew he had to submit the 1858 Rights and Responsibility Statement, and he signed it with Lt. Wattree. (Doc. 33.) He submitted requests to Lt. Wattree to give him a copy of the 1858 Rights and Responsibility Statement, but Wattree never gave it to him. Plaintiff submitted his grievance to the third level and was screened out for failure to include the 1858 Rights and Responsibilities Statement. In his "opposition," (Doc. 35), Plaintiff

---

[4] Plaintiff disputes this fact in that he contends he received a partial handwritten response in red ink at the third level stating that Plaintiff's appeal was "denied on the merits and screened out." Plaintiff's dispute of this fact is discussed at length, *infra*.

6

contents that he has sufficiently alleged a cause of action and summary judgment should not be granted. Any fault for not submitting the 1858 Rights and Responsibilities Statement was not with Plaintiff, because he reached out to get the form. Plaintiff signed the form with Lt. Wattree and asked Lt. Wattree for a copy. Lt. Wattree told Plaintiff to file a form 22 (request for interview). Plaintiff was never given access to the 1858 Rights and Responsibilities Statement. He requested multiple times to see Wattree to get the 1858 Rights and Responsibilities Statement, but Wattree never came to see him. Plaintiff's second argument is that he contends that the third level was denied on the merits. Plaintiff argues that he received a response at the third level which attached a form with markings in red ink explaining that the grievance was "denied on the merits and screened out." Plaintiff argues he requested that form in discovery which was not produced to him. Plaintiff argues that remedies are not available if required forms are not provided to the prisoner. *Draper v. Rosario,* 836 F.3d 1072, 1078 (9th Cir. 2016).

In reply, Defendants argues the opposition contains only arguments or unsworn allegations regarding administrative remedies or Defendants' evidence. Defendant argues the opposition complains about a discovery dispute, namely his request for a handwritten form that was purportedly attached to his third-level review. Defendants contend that this mysterious handwritten form, indicating that Plaintiff's appeal was "denied on the merits and screened out" due to failure to attach the 1858 Rights and Responsibilities Form, is inadmissible hearsay. The proven facts are that third-level review rejected or screened out his appeal, and no substantive decision was made at the third level. Defendants argue the purported handwritten form that states a grievance was "denied on the merits and screened out for failure to submit an 1858 Rights and Responsibility Statement" describes a legal impossibility, citing Cal. Code Regs.,tit. 15, § 3084.1(b).[5] Defendants object to Plaintiff's Declaration filed in opposition to the motion and request the Court strike the Declaration. (Doc. 34, p. 6.) Defendants argue that they attached the entirety of the grievance file to their motion and no such handwritten form exists. This Court

---

[5] At the time of the incident at issue in this case, §3084.1(b) stated: "(b) Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted. All lower level reviews are subject to modification at the third level of review. . . In addition, a cancellation or rejection decision does not exhaust administrative remedies."

7

1   should consider the absence of such a record in a regularly conducted activity as evidence to

2   prove that the alleged form does not exist. Fed.R. Evid. 803(7).

3         2.      <u>Analysis</u>

4              <u>No Exhaustion through the Third Level</u>

5       Defendants argue that his motion for summary judgment should be granted and this action

6   should be dismissed without prejudice because KVSP had an available administrative grievance

7   process, and Plaintiff submitted a relevant grievance, which was not exhausted at the third level.

8   Plaintiff contends that Defendants' motion for summary judgment should be denied because he

9   exhausted all of his remedies and because the undisputed facts show that Defendants failed to

10  protect Plaintiff.

11      In this case, based on the admissible evidence before the Court, a reasonable factfinder

12  could not conclude that Plaintiff exhausted his available administrative remedies before filing this

13  action.  It is undisputed that CDCR has a three-level process in place to review administrative

14  appeals filed by inmates.  Further, it is undisputed that, on or about July 12, 2018, Plaintiff

15  submitted his only appeal related to the claims in this case, Appeal No. KVSP-O-18-01973. The

16  appeal contended that he had expressed safety concerns to Sergeant C. Huckleberry, and the

17  escorting officers were Correctional Officers M. Franco and M. Marquez.  (Doc. 32-5, p. 10; Doc.

18  32-2, Wattree Decl. ¶12.)  It is undisputed that the appeal was processed as a staff complaint.  It is

19  undisputed that Plaintiff completed a CDCR Form 1858 Rights and Responsibilities Statement,

20  which is required to be submitted with an appeal that is designated a staff complaint.  Plaintiff's

21  appeal was partially granted at the second level, which was sent to Plaintiff on September 5,

22  2018, and staff was found not to have violated any CDCR policy. (Doc. 32-5, p. 5.)

23      Plaintiff appealed to the third-level review, which was logged at CDCR's Office of

24  Appeals as log number (IAB No. 1813513).  However, the Office of Appeals rejected Plaintiff's

25  grievance on January 18, 2019 because it was missing a necessary supporting document, the

26  CDCR Form 1858 Rights and Responsibilities Statement. (Doc. 32-5, p. 19.) The appeal was

27  returned to Plaintiff with a rejection letter stating, "Your appeal has been rejected" and the reason

28  for the rejection was because, "Your appeal is missing [] CDCR Form 1858, Rights and

8

Responsibilities Statement." (Doc. 32-5, p. 19.) Plaintiff did not resubmit the appeal to the third level. ((Doc. 32-5, Moseley Decl. ¶ 10.) Thus, Plaintiff did not cure the deficiency at the third level, and therefore, Plaintiff did not exhaust through the third level of the administrative appeals process before filing suit.

<u>Obtaining the 1858 Rights and Responsibilities Statement</u>

Plaintiff acknowledges he knew the importance of submitting the 1858 Rights and Responsibility Statement at the third level and that it was necessary to third level review of his appeal. He contends, however, that he did not get a copy of the 1858 Rights and Responsibilities Statement because all his requests to Lt. Wattree went unanswered. Plaintiff contends he was not provided a copy by Lt. Wattree so that he could include it in the third level appeal. Plaintiff contends he should not be found at fault because he was unable to obtain the 1858 Rights and Responsibilities Statement.

Plaintiff has not disputed that there were alternative ways for Plaintiff to get a copy the 1858 Rights and Responsibilities Statement. In addition to requesting a copy of the 1858 Rights and Responsibilities Statement from Lt. Wattree, Plaintiff could request a copy from various other sources, including the institutions' appeals coordinator, from the institution's record custodians, or from any correctional counselor, officer or staff. (Doc. 32-2, Wattree Decl. ¶¶23-27 (outlining the ways for an inmate to obtain the 1858 Rights and Responsibilities Statement.)) In addition, Plaintiff could have also submitted a CDCR Form 22 "Inmate Request for Interview, Item or Service," and a copy would have been provided to Plaintiff.[6] (Doc. 32-2, Wattree Decl. ¶¶28-29.) Plaintiff also could have filed a 602 grievance to obtain a copy of the 1858 Rights and Responsibilities Statement. *Id.*

The undisputed evidence is that Plaintiff had alternative avenues for obtaining a document which he admits he knew was important to the appeal in KVSP-O-18-01973, yet Plaintiff did not pursue any of the alternative avenues. Therefore, as Plaintiff could have obtained the 1858 Rights

---

[6] In his August 11, 2021 surreply, Plaintiff contends that he submitted a Form 22 to request a copy of the 1858 Rights and Responsibilities Statement. (Doc. 41, p.3.) However, Plaintiff did not attach a copy of the Form 22 he purportedly submitted. The Court notes that Plaintiff's testimony is not under penalty of perjury, and the Court does not consider it.

9

and Responsibilities Statement from sources other than Lt. Wattree, his failure to do so does not excuse his compliance with exhausting at the third level of review.

### Evidence of the "Red Ink" Document Denying Plaintiff's Appeal on the Merits

Plaintiff next argues that his appeal in KVSP-O-18-01973 was denied on the merits at the third level because he received a written response with "red ink" on it saying that the third level appeal was "denied on the merits and screened out." Plaintiff contends at the third level, "there was a form attached to my grievance written in red ink explaining to me my grievance was denied on the merits and screened out." (Doc. 33, p.2.)

Plaintiff, however, did not seek to introduce into evidence the document he contends he received with red ink saying his appeal was "denied on the merits." (Doc. 33, p. 2.) Since Plaintiff received the document with the red ink attached to his grievance, the red ink document must have been in his possession. Indeed, Defendants cannot be in possession of the original red ink document as Plaintiff states he received the document with red ink on it. Any failure to produce the document lies with Plaintiff as he was in possession of the original. It was his burden to introduce the document into evidence to support his claim. He has failed to do so.

Instead, Plaintiff submits a declaration testifying about the contents of the document with "red ink." Plaintiff has not attempted to satisfy the Rules of Evidence that evidence other than the original may be offered to prove the contents of a writing. See Fed.R. Evid.1004 (Original lost or destroyed) and 1007 (The proponent may prove the content of a writing, recording, or photograph by the testimony, deposition, or written statement of the party against whom the evidence is offered.). Plaintiff's declaration testifying about the contents of the purported handwritten document with the "red ink" is inadmissible hearsay and therefore, not reliable. Rather than crediting Plaintiff's unreliable statement about a handwritten "red ink" document, the Court has before it admissible evidence from Defendants: an authenticated and reliable document screening out Plaintiff's appeal at the third level. (Doc. 32-5, p. 19, Exh. 3 ("Your appeal is missing [] CDCR Form 1858, Rights and Responsibilities Statement.")). The Court finds persuasive Defendants argument that they produced the entire grievance file and no such "red ink" document

was contained therein.[7] Fed.R.Evid. 803(7); (See Doc. 34, p. 6; Doc. 32-5, Moseley Decl. ¶8-9 (grievance log number KVSP-18-01973 and the third level appeal.))  Therefore, Plaintiff does not introduce admissible evidence that this third level appeal was "denied on the merits."[8]

Plaintiff did not Request Grievance Documents in Discovery

Plaintiff argues that he requested the red ink document during discovery, and it was never produced. (Doc. 35, Opposition, p. 8 ("Plaintiff states in his discovery that defendants 'produce all documents and grievances in this case.'"))  Defendants, however, present evidence that Plaintiff never requested grievances in his request for production of documents. Instead, Plaintiff only requested documents about the underlying incident on July 6, 2018.  (See Doc. 34, p. 7; Doc. 34-3, Exh. 1, p.1 ("All written statements, originals or copies, identifiable as reports about the incident on July 6, 2018 made by docs [sic] employees or witnesses [sic].")).  As Plaintiff did not request the purported "red ink" document or any document about his grievance, there was not a failure on Defendants' part to produce grievance documents.  This discovery dispute argument raised by Plaintiff is a non-issue and fails to raise a triable issue of fact.

**IV.   Conclusion and Recommendations**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment for the failure to exhaust administrative remedies (Doc. No. 32) be granted;

2. Plaintiff's claims be dismissed, without prejudice, for Plaintiff's failure to exhaust available administrative remedies.

---

[7] The Court may make such factual and evidence reliability determinations on a motion for summary judgment for failing to exhaust administrative remedies. "We reiterate that, if feasible, disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014); *Cato v. Dumont*, 698 F. App'x 380 (9th Cir. 2017) ("[D]isputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," citing *Albino*.)

[8] In his August 11, 2021 surreply (Doc. 41), Plaintiff argues that he had asked the Court to continue this motion so he could produce the red ink document.  The Court declines to do so.  Defendant's motion has been pending since December 23, 2020, and Plaintiff's Declaration and Opposition were filed in January and February 2021.  The delay caused by judicial congestion has been sufficient time for Plaintiff to produce the red ink document, if it existed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 12, 2021**                     /s/ Barbara A. McAuliffe            _
                                               UNITED STATES MAGISTRATE JUDGE